UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., et al., | Case No. 2:16-CV-1612 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| PACIFIC LEGENDS GREEN VALLEY OWNERS' ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A.'s ("BANA") motion for summary judgment. (ECF No. 60). Defendants BFP Investments 3, LLC ("BFP") filed a response (ECF No. 65), to which BANA replied (ECF No. 70).

Also before the court is BFP's motion for summary judgment. (ECF No. 61). BANA filed a response (ECF No. 63), to which BFP replied (ECF No. 67).

Also before the court is BANA's motion for leave to file supplemental authority. (ECF No. 74). BFP filed a response (ECF No. 75), to which BANA replied (ECF No. 76).

**I.     Facts**

This action arises from a dispute over real property located at 75 N. Valle Verde Dr. #1025, Henderson, Nevada 89074 ("the property"). (ECF No. 1).

Sven Steffen purchased the property on March 12, 2002. (ECF No. 61-4). On July 7, 2009, Steffen refinanced the property with a loan in the amount of $207,994.00 from Security National Mortgage Company ("Security National"). (ECF No. 60-1). Security National secured the loan with a deed of trust, which names Security National as the lender, North American Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary as

nominee for the lender and lender's successors and assigns. *Id*. The Federal Housing Authority ("FHA") insured the deed of trust at origination. *See id*. BANA currently holds all beneficial interest in the deed of trust. (ECF No. 60-3).

On January 3, 2012, defendant Pacific Legends Green Valley Owners' Association ("Pacific Legends"), through its agent defendant Nevada Association Services, Inc. ("NAS"), recorded a notice of delinquent assessment lien ("the lien") against the property for Steffen's failure to pay Pacific Legends in the amount of $1,863.63. (ECF No. 60-4). On February 24, 2012, Pacific Legends recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $3,042.18 as of February 21, 2012. (ECF No. 60-5).

On March 13, 2012, BANA requested a ledger from Pacific Legends so that BANA could determine the superpriority portion of the lien and tender payment of that amount. (ECF No. 60-6). Pacific Legends did not respond to BANA or otherwise provide information that would allow BANA to calculate the superpriority portion of the lien. *See id*. As a result, BANA never sent a check to Pacific Legends. *See id*.

On June 4, 2014, Pacific Legends recorded a notice of trustee's sale against the property. (ECF No. 60-9). On August 22, 2014, Pacific Legends sold the property in a nonjudicial foreclosure sale to BFP in exchange for $19,000.00. *See* (ECF No. 60-10). On August 25, 2014, Pacific Legends recorded the foreclosure deed with the Clark County recorder's office. *Id*.

On July 8, 2016, BANA initiated this action, asserting four causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against Pacific Legends and NAS; (3) wrongful foreclosure against Pacific Legends and NAS; and (4) injunctive relief against BFP. (ECF No. 1). On December 16, 2016, BFP filed an answer and cross/counterclaims, asserting two causes of action: (1) quiet title/declaratory relief against BANA and Steffen; and (2) injunctive relief against BANA and Steffen. (ECF No. 25).

Now, BANA and BFP have filed cross-motions for summary judgment. (ECF Nos. 60, 61).

. . .

. . .

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As a preliminary matter, the court will grant BANA's motion for leave to file supplemental points and authorities (ECF No. 74) pursuant to Local Rule 7-2(g) as the points and authorities include new case law relevant to BANA's tender argument in its motion for summary judgment.

The parties have filed cross-motions for summary judgment, disputing whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 60, 61). Because BANA has shown that Pacific Legends' conduct cured the default with respect to the superpriority portion of the lien, the court will grant BANA's motion for summary judgment and declare that the deed of trust encumbers the property.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require

any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq*. ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 60-4, 60-5, 60-9, 60-10). Further, the recorded trustee's deed upon sale contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 60-10); *see Shadow Wood*, 466 P.3d at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See*

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

*Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

BANA argues that the foreclosure sale did not extinguish the deed of trust because Pacific Legends rejected BANA's offer to tender the superpriority portion of the lien. (ECF Nos. 60, 74-1). In light of the Nevada Supreme Court's holdings in *Bank of America, N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113 (Nev. 2018) (*"SFR III"*) and *Bank of America, N.A. v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217 (Nev. 2019) ("*Jessup*"), the court agrees.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016) ("NRS 116.3116(2) . . . is limited to an amount equal to the common expenses assessments due *during the nine months before foreclosure*") (emphasis added).

In *SFR III*, the Nevada Supreme Court held that an HOA foreclosure sale does not extinguish a first deed of trust if the holder of the deed of trust tenders the superpriority portion of the HOA lien. *SFR III*, 427 P.3d at 121. The Nevada Supreme Court also held in *Jessup* that an offer to make payment at a later date does not constitute valid tender. *Jessup*, 435 P.3d at 1219–20. However, an HOA's rejection of such an offer cures the default as it pertains to the superpriority portion of the lien and prevents the foreclosure sale from extinguishing the deed of trust. *Id*. at 1220.

**James C. Mahan**
**U.S. District Judge**

- 7 -

Here, BANA sent a letter to Pacific Legends' agent stating that it would pay the superpriority portion of the lien after Pacific Legends presents adequate proof of the superpriority amount. (ECF No. 60-6). Because BANA's letter was an offer to pay at a later date, it did not constitute tender of the superpriority portion of the lien. *See Jessup*, 435 P.3d at 1219–20. However, Pacific Legends' agent engaged in conduct that amounted to a rejection of BANA's offer when it refused to respond to the letter. *See id*. at 1220 (citing 74 Am. Jur. 2d Tender § 4 (2012) ("A tender of an amount due is waived when the party entitled to payment, by declaration *or by conduct*, proclaims that, if tender of the amount due is made, it will not be accepted.")). Pacific Legends' rejection cured the default of the superpriority portion of the lien and prevented the foreclosure sale from extinguishing BANA's deed of trust. *See id*.

**IV.     Conclusion**

The foreclosure sale did not extinguish the deed of trust because Pacific Legends rejected BANA's offer to pay the superpriority portion of the lien at a later date. Thus, BANA's deed of trust encumbers the property. As there are no pertinent issues left in this litigation, the court will dismiss as moot all remaining causes of action.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 60) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that BFP's motion for summary judgment (ECF No. 61) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's motion for leave to file supplemental points and authorities (ECF No. 74) be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED July 26, 2019.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -